[No. 34110-3-I. Division One. December 18, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN CHRISTOPHER GRAHAM, *Appellant*.

---

138

Colleen E. O'Connor of Washington Appellate Defender Association; and Nielsen & Acosta, for appellant.

Norm Maleng, Prosecuting Attorney, and Catherine Hendricks, Deputy, for respondent.

COLEMAN, J. — Kevin Graham appeals his juvenile court conviction for obstructing a public servant and resisting arrest. He asks this Court to decide whether off-duty police officers working as private security guards are "public servants" discharging their "official powers and duties" for purposes of former RCW 9A.76.020(3). Because the officers were acting in their capacity as police officers with respect to the challenged acts, we affirm. We further hold that there was probable cause for an arrest and that Graham's convictions do not violate double jeopardy or merger principles.

On August 10, 1993, Kim Bogucki and Michelle Hackett, both City of Seattle police officers, were working an off-duty job as security officers for the Denny Regrade Council. Officer Hackett testified that their employer paid them to stay on the streets, not to arrest people and transport them to the precinct. The officers were carrying revolvers. Officer Hackett testified that they were "in uniform," although she did not specifically state that they wore Seattle Police Department uniforms. At around 11 P.M., the officers, on bicycles, rounded the corner of Third Avenue and Stewart Street and saw then 16-year-old Graham. Officers Bogucki and Hackett testified that Graham was carrying a wad of money in one hand and a plastic wrapper containing what appeared to be crack cocaine in the other.

Upon seeing the officers, Graham shoved the items into his pockets and began crossing the street against the "Don't Walk" light. The officers called for Graham to stop and come back to talk to them. When he did not return, Officer Hackett went into the street and physically brought him back. Officer Hackett testified that Graham was sweating profusely, appeared nervous, and continued to pull away from her. Graham would not take his hands out of his pockets, so the officers slowly removed his hands. Officer Hackett then went inside Graham's front pockets to see if what they had seen was rock cocaine. She pulled several items out from Graham's pockets and handed them to Officer Bogucki. Officer Bogucki spread the items on the ground and began to sift through them looking for the narcotics she thought she had seen.

Officer Hackett thought Graham was about to run and told Officer Bogucki to stand. She testified that Graham asked her why she needed the other officer to stand, and she stated, "Because I think you have dope on you." Graham then pulled away and ran. Graham testified that he ran because he had an outstanding warrant for a driving violation.

The officers then yelled, "Stop! Police!" Bogucki ran after

Graham while Hackett stayed behind to collect the money and other items. Bogucki testified that as Graham ran, he reached into his pocket and appeared to eat something. Officer Hackett then caught up on her bicycle, and the officers apprehended Graham several blocks away.

Officer Hackett testified that as she tried to cuff Graham, he struggled to get free. Officer Bogucki testified that Graham was pulling away, yelling, flailing his arms, and once cuffed, kicking such that the officers shackled his feet. Two other officers then arrived and placed Graham under arrest. Graham was charged with obstructing a public officer under RCW 9A.76.020(3) and resisting arrest under RCW 9A.76.040(1).

We first consider whether off-duty police officers working for a private security company are "public servants" discharging their "official powers and duties" for purposes of former RCW 9A.76.020(3) (1975), which made it a misdemeanor to "knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers and duties." Graham contends that statutory construction and case law from other jurisdictions indicate that the officers were neither public servants nor discharging their official powers and duties. He further argues that finding otherwise would hinder public policy.

Whether the officers were public servants discharging their official powers and duty is a question of law that we review de novo. *See State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111 (1992). In *State v. Brown*, 36 Wn. App. 166, 168, 672 P.2d 1268 (1983), this Court determined that an off-duty police officer had the authority of an on-duty police officer to make warrantless arrests for misdemeanors committed in his presence pursuant to RCW 10.31.100. In *Brown*, the off-duty officer was at home when he saw a car prowl in progress. He identified himself to the prowler as a police officer and attempted to arrest the man. *Brown*, 36 Wn. App. at 167. The court, in affirming the defendant's conviction for resisting arrest, noted that its conclusion

furthered public safety and deterred criminal behavior. *Brown*, 36 Wn. App. at 169. Washington courts have not, however, squarely addressed the question of whether privately employed off-duty police officers are "public servants" discharging their "official powers and duties" pursuant to former RCW 9A.76.020(3).

Other jurisdictions with similar statutes protecting police officers have reached varying conclusions. In *Stewart v. State*, 527 P.2d 22, 24 (Okla. Crim. 1974), an Oklahoma court held that an off-duty police officer working as a security guard without a uniform or a gun was a private citizen. The officer in *Stewart* stopped a man for questioning outside the building he was monitoring and was assaulted by the man. *Stewart*, 527 P.2d at 24. Because the officer was representing his employer's interest and not the public's interest, the court determined that the defendant could not be convicted of assaulting a police officer. *Stewart*, 527 P.2d at 24. Similarly, in *People v. Corey*, 21 Cal. 3d 738, 147 Cal. Rptr. 639, 581 P.2d 644, 646 (1978), an off-duty police officer working as a uniformed security guard at a dance refused to let the defendant reenter the dance. A violent struggle ensued, and the officer placed Corey under arrest for assaulting a police officer. *Corey*, 581 P.2d at 646. The California Supreme Court determined that, because the officer was engaged in a private contract, he could not be performing his official duties for purposes of a statute aimed at protecting peace officers. *Corey*, 581 P.2d at 648-49. Again, in *People in Interest of J.J.C.*, 854 P.2d 801, 805-06 (Colo. 1993), a Colorado court determined that no evidence indicated that an off-duty officer employed as a security guard at a skating rink was acting under his authority as a police officer; thus, the defendant could not be convicted of resisting arrest.

Other states have determined that privately employed off-duty officers can be public servants engaged in their official duties. In *State v. Kurtz*, 78 Ariz. 215, 278 P.2d 406, 407 (1954), off-duty officers employed as security

guards at a dance witnessed an altercation outside after the event and attempted to arrest the defendant. The court held that the officers were public officials for purposes of a statute making it a crime to obstruct a public officer in the discharge of his duties. The court reasoned that the officers were not merely performing acts of service for their employer but were "acting in vindication of the public right in apprehending a wrongdoer." *Kurtz*, 278 P.2d at 408. Similarly, in *State v. Coleman*, 224 Kan. 447, 580 P.2d 1329, 1331 (1978), an off-duty police officer working as a security guard at a supermarket witnessed a shoplifting and attempted to arrest the defendant after identifying himself as a police officer. The court determined that the police officer was a law enforcement official "engaged in the performance of his duty" for purposes of charging the defendant with aggravated battery of a police officer. *Coleman*, 580 P.2d at 1332-33.

 After examining pertinent case law, we find the following to be the relevant inquiry: Were the officers acting in their capacity as police officers in attempting to perform a law enforcement function or were they performing acts of service solely for their employer? *See J.C.C.*, 854 P.2d at 805; *Kurtz*, 278 P.2d at 408. Here, by stopping Graham on a public street for carrying suspected narcotics, the uniformed, armed officers were not only serving their employer, but were also acting in their capacity as police officers attempting to enforce narcotics laws on a public street. The officers were therefore fulfilling dual responsibilities as police officers and as security guards. Moreover, Officer Hackett testified that the council paid them to patrol the area, not to make arrests and transport suspects to the precinct. Thus, they may have even acted partially in conflict with their employer's interest by arresting Graham in order to fulfill their duties as police officers. Rather than hindering public policy, this conclusion serves to protect officers and to prevent violence. Thus, in this instance, we hold that the off-duty police officers were public servants engaging in

their official powers and duties for purposes of RCW 9A.76-.020(3).

We affirm Graham's conviction for both resisting arrest and obstructing a public servant.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KENNEDY, A.C.J., and ELLINGTON, J., concur.

Review granted at 129 Wn.2d 1010 (1996).